IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00285-DME-MJW

GEORGE BANKS,

Plaintiff,

v.

CAPTAIN  HODAK,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
(which was converted to a motion for summary judgment)
(Docket No. 58)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Amended Order of Reference to

United States Magistrate Judge issued by United States Circuit Judge David M. Ebel

on April 9, 2009.  (Docket No. 26).

In the Amended Prisoner Complaint (Docket No. 8), brought pursuant to 28

U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agesnts of Fed. Bureau of Narcotics</u>,

403 U.S. 388 (1971), the pro se incarcerated plaintiff raises three claims against the one

named defendant, Captain Hodak, and alleges the following.  In the Nature of the Case

section of the pleading, he states:

<u>Mandated Assault and Battery</u>

On December 30, 2008, I was called to the Lt.'s Office I was
instructed to place my hands against the wall.  Then Lt. Snyder asked me

> what do you have in your hand.  I showed him a candy wrapper I had in
> my hand.  I shifted my weight to maintain my balance and opened my
> hand to show the Lt.  Then all at once, Captain Hodak was behind me, he
> forcefully slammed my head to the wall and my body also.  My medical
> records reflect that I have a stent in my right eye.  The impact with the wall
> caused extreme pain, nausea, dizziness etc.

(Docket No. 8 at 3).

In Claim One, plaintiff alleges a "Physical Assault & Battery by a BOP staff

member" based upon his head allegedly being slammed into the wall by defendant

Hodak on December 30, 2008, as described above.  (Docket No. 8 at 4).  Plaintiff

asserts there was a "Battery by a white BOP individual staff member against an

uneducated, poor, diminished black inmate without just cause due to BOP deliberate

indifference to rule of law and civil rights."  (Docket No. 8 at 4).  In addition, plaintiff

alleges that after the incident, he was not taken to the medical department for his pain.

In Claim Two, plaintiff alleges "Deliberate Indifference and Due Process by BOP,"

asserting:

> Deliberate Indifference by BOP to due process and equal protection of the
> Law, commisserate [sic] Priveledges [sic] and Rights, refusing any type of
> legal assistance program for all inmates at F.C.I. Englewood.  Especially
> those uneducated, indigent, aliens, and those mentally deficient.
> Furthermore by Harassment and retaliations (subtle and covert) against
> any "jailhouse" assistance of Counsel. . . .
>
> Supporting Facts:
> As of this date no Copy Cards, no legal Assistance.  Inmates are
> questioned by staff and abused by staff if helped by others.

(Docket No. 8 at 5).

Finally, in Claim Three, plaintiff alleges "Arbitrary and Capricious (Title 5, Sec.

706 & 901)," asserting:

> Arbitrary and Capricious Administrative remedy process based on

> presumtions [sic] and maintianed [sic] in fraud = obsfucation [sic], denial, spin, buckpassing, smoke and mirrors, etc.  Necesitating [sic] this complaint due to lack of accountability within the DOJ downstream of their infamous "Thomburgh Memorandum" allowing ignorance of ethical and thus legal considerations in all cases due to their "warehousing" political agenda. . . .
>
> Supporting facts:
> 1.) I am denied 80% of Care, and other complaints.

(Docket No. 8 at 6).

As relief, plaintiff requests "1.) Immediate Medical Attention; 2.) Transfer to more appropriate facility; 3.) Monetary Compensation; 4.) Prosecution of Assailant; [and] Copy of Facility's incident report."  (Docket No. 8 at 8).

Now before the court for a report and recommendation is the Defendant's Motion to Dismiss Plaintiff's Complaint (Docket No. 58).   While the plaintiff did not file any document captioned as a response to the defendant's motion to dismiss, shortly after the motion to dismiss was filed, plaintiff filed a document entitled "Judicial Notice Letter to Both (Judges)" (Docket No. 62).

Upon review of the defendant's motion, and in view of the exhibits and affidavits attached thereto, this court issued a Minute Order on October 6, 2009, converting the defendant's motion to dismiss to a motion for summary judgment.  (Docket No. 96). The court thus gave the parties up to and including October 20, 2009, to submit to the court additional briefing on the motion, additional materials, and a response to the materials already submitted with any "material that is pertinent to the [Rule 56] motion." (Docket No.  96) (see Fed. R. Civ. P. 12(d)).

In response, the pro se plaintiff filed two documents, namely, a "Motion of Brief Jury -Trial=Only" (Docket No. 99) and a "Motion of Brief [Total Exhaustion Rule]"

4

(Docket No. 100).  Defendant did not file any additional materials or briefing.

The court has carefully considered the motion (Docket No. 58), plaintiff's "Judicial Notice Letter to Both (Judges)" (Docket No. 62), plaintiff's two documents in response to the converted motion (Docket Nos. 99 and 100), and applicable Federal Rules of Civil Procedure and case law and has taken judicial notice of the court's file.  The court now being fully informed, makes the following findings, conclusions, and recommendation that the defendant's motion be granted.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).  See Fed.

5

R. Civ. P. 56(e)(2).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate

6

for the pro se litigant." Id.

In the instant case, defendant asserts that the plaintiff's Bivens claim should be dismissed for failure to exhaust administrative remedies.  This court agrees.  The Prison Litigation Act of 1995 (" PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" **before** suing over prison conditions.  See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005) (PLRA requires exhaustion as a "precondition" to bringing litigation and requires dismissal where a litigant has failed to complete exhaustion before initiating a suit.).  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).  The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirements . . . ."  Booth, 532 U.S. at 741, n.6.  "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation."  Beaudry, 331 F.3d at 1167.

The "failure to exhaust is an affirmative defense under the PLRA, and . . .

7

inmates are not required to specially plead or demonstrate exhaustion in their

complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  As an affirmative defense, "the

burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant."  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir.

2007).

The Bureau of Prisons ("BOP") has a four-step administrative procedure for

prisoner grievances codified at 28 C.F.R. §§ 542.10 - 542.19.  First, the prisoner is

required to seek informal resolution of his complaint with prison staff.  28 C.F.R. §

542.13.  If the complaint is not resolved informally, the prisoner must then address his

complaint to the Warden of the institution through a formal written Request for

Administrative Remedy on a "BP-9" form.  28 C.F.R. §§ 542.13, 542.14.[1]  The prisoner

is required to "obtain the appropriate form from . . . institution staff (ordinarily, the

correctional counselor)."  28 C.F.R. § 542.14(c)(1).  This BP-9 form must be submitted

no later than "20 calendar days following the date on which the basis for the Request

occurred,"  28 C.F.R. § 542.14(a), but extensions may be granted.  28 C.F.R. §

542.14(b).

If the prisoner is dissatisfied with the response from the Warden, the prisoner

then submits a Regional Office Administrative Remedy Appeal to the appropriate

Regional Director on a "BP-10" form.  28 C.F.R. § 542.15(a).  This BP-10 form must be

submitted to the Regional Director no later than "20 calendar days of the date the

---

[1] In limited circumstances (i.e., sensitive issues, DHO appeals, Control Unit appeals, and controlled housing status appeals), the initial filing does not have to be made at the institutional level.  28 C.F.R. § 542.14(d).  In such cases, the initial filing is made to the Regional Director for the region where the prisoner is currently located.

8

Warden signed the response," but extensions may granted.  28 C.F.R. § 542.15(a).  If

dissatisfied with the Regional Director's response, the prisoner then submits a Central

Office Administrative Remedy Appeal with the National Inmate Appeals Administrator in

the in the Office of the General Counsel in Washington, D.C., on a "BP-11" form.  See

28 C.F.R. § 542.15.  That form must be submitted no later than "30 calendar days of the

date the Regional Director signed the response," but extensions may be granted.  28

C.F.R. § 542.15(a).  The appeal to the General Counsel in the Central Office is the final

step of the administrative remedy process through the BOP.  28 C.F.R. § 542.15(a).

The administrative regulations further provide that at any stage of the

administrative remedy process, a request may be rejected if the prisoner fails to comply

with procedural requirements.  28 C.F.R. § 542.17(a).  When there is such a rejection,

the prisoner is to be provided with a written notice explaining the reason.  28 C.R.F. §

542.17(b).  If the defect is correctable, the notice is to inform the prisoner of a

reasonable extension within which to correct the defect and resubmit the request or

appeal.  28 C.F.R. § 542.17(b).  If, however, the inmate is not given an opportunity to

correct the defect and resubmit, the prisoner may appeal the rejection to the next

appeal level.  28 C.F.R. § 542.17(c).  The Coordinator at the next level may then affirm

the rejection, direct the submission be accepted at the lower level, or accept the

submission for filing.  28 C.F.R. § 542.17(c).

The Tenth Circuit has found that an inmate must appeal his grievance through all

available channels to exhaust his administrative records fully.  See Jernigan v. Stuchell,

304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but

does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to

exhaust his administrative remedies." ).  There is, however, a recognized exception to the requirement when an inmate has been prevented from filing a grievance.  See id. "When prison officials block a prisoner's access to the grievance process, the administrative remedies are not 'available' to the prisoner and, therefore, do not need to be exhausted prior to initiation of [an] . . . action."  Main v. Martin, 2009 WL 215404, *5 (D. Colo. Jan. 22, 2009).  There has been no showing here that plaintiff has been prevented from filing his grievance.

Defendant has shown that plaintiff did not exhaust his administrative remedies prior to the commencement of this action.  Defendant's arguments are supported by the affidavits and documentation he submitted with his motion.  Defendant first notes that in the Amended Complaint (Docket No. 8), plaintiff indicated that he did not exhaust his administrative remedies and that he was in the process of exhausting.  Furthermore, on January 20, 2009, plaintiff filed a Request for Administrative Remedy at the Regional level alleging an assault by staff, but that request was rejected because plaintiff did not first file a BP-9 request at the institutional level for the Warden's review and response before filing at the Regional level and because the issue alleged in the request was not sensitive.  (Docket No. 58-3; Montoya Aff. at 3, ¶ 8).  The BOP's SENTRY database, which is described in Ms. Montoya's Affidavit, shows that the plaintiff did not file any further administrative remedies concerning his allegation that he was assaulted by staff. He did not refile his complaint at the institutional level and thus did not exhaust Claim One.  See Jernigan, 304 F.3d at 1032; Moore v. Jones, 2009 WL 1833861 (10th Cir. June 26, 2009) (by not resubmitting his grievance, the inmate failed to employ the administrative remedies available to him).

10

In addition, defendants have shown that the plaintiff has never filed any

administrative remedies concerning Claims Two and Three of the Amended Complaint.

(Docket No. 58-3; Montoya Aff. at 3-4).

In plaintiff's document entitled "Judicial Notice Letter to Both (Judges)," he

addressed the issue of non-exhaustion, stating:

> (ON) THIS (Laweys) <u>exhausting</u> Remedies) <u>Motion</u> To Dismiss My Case:
> (No Sir) (a) 1983 Bivens suits DO NOT have to have to be <u>Exhausting</u>
> <u>before</u> <u>Fileing</u> [sic] <u>of</u>/<u>A</u> <u>Law Suit</u>) this is a <u>Civil</u> <u>Right's</u> [sic] <u>Case</u>.  <u>there</u>
> <u>was</u> <u>mes</u> <u>use</u> [sic] <u>force</u>. and <u>with</u> <u>rules</u> of A Government by Uniform
> Federal rules! <u>(Can I? ASK the Court</u> **IS** <u>**It**</u> **because** <u>**i'am**</u> [sic] <u>**a Black**</u>
> <u>**Man)**</u> <u>That</u> <u>this</u> <u>Court</u> have <u>over</u> <u>look</u> [sic] <u>the</u> <u>real Judicial</u> of <u>the</u> <u>Law</u> of <u>the</u>
> <u>Land</u>.  <u>Can the</u> <u>Court</u> <u>tell</u> <u>Me</u> <u>There</u> have <u>been</u> <u>a</u> <u>few</u> <u>case</u> <u>that</u> <u>was</u> <u>file</u>
> [sic] by White <u>Inmates</u> <u>down</u> <u>thu</u> [sic] <u>the</u> <u>years</u> on <u>this</u> <u>F.C.I.</u> <u>Prisons</u>?  Did
> you all enter the same rules.  the law is the Law.  With government Staff:
> and <u>Reg</u> <u>Peoples</u> I Request for a Jurors and a day to tell the real and all
> the claim) the 1983 Form stated to Me. that Put Lil as need to show your
> case! . . .
>
> I have Filed Adm.remedies Paper Work.  And Staff have refuse [sic] to act.
> on my requiement [sic].  From My Adm. Misconduct By staff all Due to: My
> [Civil Right's Act: Claim] . . .

(Docket No. 62 at 5-6).  In addition, in Docket No. 63 plaintiff stated in pertinent part:

"So Judges You all Both know that Staff will hide Grievances just to get a case dimess

[sic], you can see who is playing games. . . ."  (Docket No. 63 at 1).

In his "Motion of Brief-Jury Trial = Only" (Docket No. 99), plaintiff does not

address the exhaustion issue.  In his "Motion of Brief [Total Exhaustion Rule]" (Docket

No. 100), he claims "he was in compliance in exhausting the remedies . . . ."  (Docket

No. 100 at 1).  Plaintiff asks this court to compel the BOP to provide sworn testimony to

the court that he failed to exhaust all remedies.  He asserts that "[t]he lies and

misdirections by BOP Medical and Legal staff are a blatant attempt to hide or cover up

the incident of assault while an outside agency would not hide its finding." (Docket No. 100).

Defendant, however, has submitted affidavits and documentation which show that the plaintiff did not exhaust his administrative remedies with respect to any of his three claims in this case. Defendant has established that there is no genuine issue of material fact with respect to the exhaustion issue. In sum, this court finds that the plaintiff failed to exhaust his administrative remedies with respect to his claims. Therefore, it is recommended that the defendant's motion to dismiss, which was converted to a motion for summary judgment, be granted. Based upon these findings, and in the interest of judicial economy, the court will not address the defendant's additional bases for his motion to dismiss.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss (Docket No. 58), which was converted to a motion for summary judgment, be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.**

12

**1996).**

Date:  November 18, 2009                    s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                            United States Magistrate Judge